### In re NEW YORK CITY RY. CO. et al.

### In re METROPOLITAN EXPRESS CO.

#### (Circuit Court, S. D. New York. June 27, 1911.)

CORPORATIONS (§ 565*)—INSOLVENCY AND RECEIVERS—CLAIMS PROVABLE.

Where an executory contract made by a corporation is terminated by its receivers on its insolvency, a claim by the other party for damages for loss of expected future profits is not provable against the insolvent estate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2282; Dec. Dig. § 565.*]

In the matter of the receivership of the New York City Railway Company and the Metropolitan Street Railway Company. On exceptions to report of special master, disallowing claim of the Metropolitan Express Company. Report confirmed.

This cause comes here upon exception to report of the special master disallowing a claim of the Metropolitan Express Company against the Metropolitan Street Railway Company for damages resulting from the failure to carry out a contract, which the receivers repudiated. The damages sought to be proved were expected future profits.

The following is the report of Special Master W. L. Turner:

On the 4th of March, 1901, the express company entered into a contract with the Metropolitan Street Railway Company by which the latter gave the former the exclusive right of moving express matter over its tracks in the boroughs of Manhattan and the Bronx for a period of 20 years from the date named, agreeing among other things to furnish the necessary cars for that purpose, in consideration of which the express company was to pay on the 20th of each month during the term 20 per cent. of the gross receipts as defined in the agreement for the previous calendar month.

On February 14, 1902, the railway company leased all its property, including this contract, to the New York City Railway Company, and thereafter, on July 15, 1904, the express company assigned the said contract to the American Express Company; its provisions being faithfully carried out by lessee and assignee, respectively, until receivers were appointed on September 23, 1907, of the property of the New York City Company. Thereafter, and on October 1, 1907, the same receivers were appointed of the Metropolitan Street Railway Company, and the contract with the express company was continued until February 28, 1908, when the receivers by a letter of that date, headed "New York City Railway Company, Lessee Metropolitan Street Railway System," addressed to the American Express Company and signed by them as receivers, without further words of description, notified the American Express Company that this contract of March 4, 1901, to which they as receivers and the company addressed had succeeded as parties in interest, was not one for the advantage of the receivership to continue, as it showed little or no profit to the receivership, and interfered with the proper handling of passenger traffic, and named March 15, 1908, as the date when they would discontinue the operation of express cars. Thereupon the American Company terminated the contract of assignment to it, as by its terms it had the right to do, and the claimant filed its claim for the speculative damages which it insists are results of the breach.

Up to the receipt of this letter there had been no breach of the contract by either express company, and none by either railway company, unless, as is now contended, the fact that both these latter admitted the charge of insolvency contained in the creditors' bill of complaint in the suits in equity begun in this court in which these receivers were appointed constituted such a breach. The receivers were, of course, well within their rights in taking the very reasonable time that they did take before refusing to adopt the contract, and did not by that refusal in any way subject the estate or property of either company to a claim for damages as for a breach. U. S. Trust Co. v. Wabash Railway Co., 150 U. S. 299, 14 Sup. Ct. 86, 37 L. Ed. 1085; Wells v. Hartford Manilla Co., 76 Conn. 27, 55 Atl. 599.

It is clear that both on September 23, and October 1, 1907, the dates of the appointments of the receivers, the contract for breach of the provisions of which this claim is filed was executory on both sides, and I think, notwithstanding the confusion respecting the matter in which the mind is left after reading the decisions in the reports, federal and state, that the weight of authority supports the rule that, where there has been no breach of an executory contract up to the date of an involuntary adjudication of insolvency, damages resulting from that fact, or from any later breach, cannot be proven as against other creditors whose claims are then absolute, and that, quite independent of any express statutory provision, such as the bankruptcy act, this rule applies to the administration in equity of the property and estate of an insolvent corporation. Fidelity Safe Deposit Co. v. Armstrong (C. C.) 35 Fed. 567; Malcomson v. Wappoo Mills (C. C.) 88 Fed. 680; Gay Mfg. Co. v. Gittings, 53 Fed. 45, 3 C. C. A. 422; N. Y. Sec. & Trust Co. v. Lombard Ins. Co. (C. C.) 73 Fed. 537; Wells v. Hartford Manilla Co., 76 Conn. 27, 55 Atl. 599; People v. Globe Mutual L. Ins. Co., 91 N. Y. 174; Matter of Hevenor, 144 N. Y. 272, 39 N. E. 393; Deane v. Caldwell, 127 Mass. 242.

The cases cited are varied, do not arise under the bankruptcy acts, and suggest claims for rent not accrued, for damages for subsequent breaches of outstanding contracts, both for the sale and the purchase of goods, for claims on guaranties which had not ripened into fixed liabilities at the date

.f the adjudication of insolvency, and for claims arising out of contracts for personal services. They do not include cases either in the Supreme Court or in the Circuit Court of Appeals in this circuit, and I have been referred to none; but the principle is, I think, distinctly recognized in decisions of both tribunals under the recent bankruptcy act as a general doctrine of equity, and applicable, not only generally, but even under statutes so broad in their terms as to authorize the allowance of contingent claims. Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084; In re Roth & Appel, 181 Fed. 667, 104 C. C. A. 649. In the latter case it is pointed out that under the bankruptcy acts of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 440) and 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), which expressly permitted the proof of contingent claims, claims were held not provable for rent unaccrued at the time of filing the petition, because both the existence and amount were then contingent upon uncertain events; and in the former case it was said that under the present act permitting claims to be proved, absolutely owing at such time, even if unliquidated, when liquidated pursuant to the direction of the court, it was not "intended to permit proof of contingent debts or liabilities or demands the valuation or estimation of which it was substantially impossible to prove."

. So in a case just decided by the Supreme Court, holding that secured creditors, selling their securities after the filing of the petition in bankruptcy and finding the proceeds not enough to pay the whole amount of their claim, cannot have the proceeds applied, first to interest, and then to principal, leaving the balance to be proved, but must have such proceeds applied to principal, thus preventing them from practically securing an allowance of interest after the petition is filed, Judge Holmes says: "For more than a century and a half the theory of the English bankruptcy system has been that everything stops at a certain date. Interest was not computed beyond the date of the commission. * * * The rule was not laid down *because of the words of the statute, but as a fundamental principle.* We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system, somewhat as the established construction of a law goes with the words where they are copied by another state." Sexton as Trustee v. Dreyfus, 219 U. S. 339, 31 Sup. Ct. 256, 55 L. Ed. ——. The principle asserted is, I think, among the fundamental principles thus adopted in the administration of estates of insolvents, individual or corporate, in the absence of express statutory command or prohibition, and the cases cited, with others that the books contain, federal and state, not necessary to refer to, are illustrations of its application.

Counsel for the claimants, in the brief filed, urges that, apart from the cases referred to under the bankruptcy act, which he rejects as inapplicable, but which have, I think, the relevancy indicated, the contention of the receivers is based solely on the authority of People v. Globe Mutual Insurance Co., supra, since the single federal case not arising under bankruptcy acts cited by them (Malcomson v. Wappoo Mills, supra) rested on that case, and that that case is clearly distinguishable from the claim under examination. The only ground of distinction that need be noticed is suggested by the fact that the railway company admitted its insolvency in the creditors' suit in which receivers were appointed, from which it is argued that, having by its own acts put it out of its power to perform, a breach resulted which justifies the contention that on the appointment of the receivers the liability was fixed and subsisting, leaving only the damages, if any, to be liquidated. It is, of course, an established principle of law that, where one of the parties to an executory contract does that which puts it out of his power to perform, the other may sue without waiting for a definite breach; but I do not think that such a right results from the single fact of the insolvency of such party. Certainly neither the cases cited above nor the Globe Case hold this, for they would then have been decided otherwise, and the Globe Case, as I read the opinion, meeting just this contention, holds that there can be no presumption, from the mere fact of insolvency in the absence of other evidence—and there is none here—that such condition resulted from definite acts or omissions of the party which put performance out of question; the

presumption, if any, being that it was due to causes over which such party had no control.

The claimant further insists that the facts of People v. National Trust Co., 82 N. Y. 283, which is cited with approval and distinguished in the Globe Insurance Case, are so nearly on all fours with those of the claim here involved as to require its liquidation and allowance as an open and subsisting engagement of the corporation at the time of the appointment of receivers, in accordance with the principle there applied. There a lessor insisted on a right to have a claim for rent enforced by peremptory order for the full amount, without regard to the claims of the other creditors, out of assets of a corporation in receiver's hands, which were more than sufficient to meet the outstanding corporate engagements of every character, and to leave a surplus of $900,000 for distribution among the stockholders. His claim was for rent accruing in fixed amounts for the remainder of a term of five years. One year and seven months, during which the quarterly rent reserved had been paid, had elapsed when the receiver was appointed, and he occupied for thirteen months more, when he vacated, tendering a surrender, which was refused, but paying all rent then due, and the claim urged was for the next quarter of the remainder of the term. The sole answer was that, as in an action for ouster by the state a judgment of dissolution had been entered, the corporate life had been terminated and with it the lease and obligation thereunder, and it was on this question that the court passed, refusing as unnecessary to consider the question of priority, and holding, as the Court of Appeals in this circuit in Roth & Appel, supra, has recently held under the bankruptcy act, that where the receiver does not elect to adopt the lease, the *lessee's* obligation to pay rent in the future is not discharged and that *his* liability survives, but allowing its proof with those of other creditors, doubtless because there were sufficient funds. It is obvious that in this case, unlike the case at bar, or any of the cases I have cited, the controversy was, not between a creditor claimant and other creditors, but between the creditor claiming and a receiver representing the stockholders, whose surplus would have been diminished, had the claim been allowed. I do not regard it as determining that the law of this state is conclusive against receivers representing general creditors who are protesting, as here, against the allowance on an equality with such creditors of a claim contingent at the date of their appointment for damages likewise contingent and uncertain, since that question was not there present.

Treating the contract in the claim at bar, as claimant insists it should be treated, as a lease, the lessee, not the lessor, as in this National Trust Co. Case, claims, not for fixed sums accruing at intervals under an outstanding lease, as there, but for contingent damages in the nature of speculative profits flowing and to flow as from an eviction subsequent to the receivers' appointment, insisting that the amount of such profits, if any, when determined, is provable on an equality with the claims of general creditors based on absolute liabilities calling at the date of the receivership for the payment of sums, ascertained or capable of ascertainment, matured or to mature against a fund, not, as in the National Trust Co. Case, sufficient to meet all outstanding claims contingent and absolute, but insufficient to · meet even these latter. I do not think that the National Trust Co. Case establishes that the rule for New York state is that such a claim may be thus proved; but, if it do, it would be at variance, not only with later decisions of the same court (see People v. St. Nicholas Bank, 151 N. Y. 597, 45 N. E. 1129, and Matter of Hevenor, 144 N. Y. 271, 39 N. E. 393), but with the rule followed in this as well as other federal jurisdictions, and in other states as well, which rule, I assume, controls here.

As originally filed, the claimant's demand was for $129,704.32, being at the rate of $10,000 per annum for the unexpired 12 years and odd of the term of 20 years; such annual sum being the amount promised it for the privilege for that period by its assignee, the American Express Company. Acquiescing in the contention that this did not furnish the proper measure of damages, it sought to establish such damages by proof of what the American Express had accomplished while operating, coupled with some opinion evidence as to the probability of claimant's accomplishing similar results

in the future. The evidence adduced is attacked as wholly insufficient to base a finding on; but it is unnecessary to pass on the objection, as I conclude that it is not provable against general creditors.

The receivers have until March 15, 1911, to file with me and serve a proposed report containing findings and conclusions in accordance with the foregoing; the claimant to have five days thereafter to file its objections.

Page, Crawford & Tuska (G. H. Crawford, of counsel), for claimant.

Masten & Nichols (William M. Chadbourne, of counsel), for receivers of Metropolitan St. Ry. Co.

O'Brien, Boardman & Platt (George N. Hamlin, of counsel), for contract creditors' committee.

Charles Benner (Benjamin S. Catchings, of counsel), for tort creditors' committee.

Geller, Rolston & Horan (Charles T. Payne, of counsel), for Farmers' Loan & Trust Co., as trustee, successor of Morton Trust Co., as trustee.

LACOMBE, Circuit Judge. While fully concurring in the opinion of the special master as to the nature of this claim, and in his reasons for disallowing it, I am also clearly of the opinion that there was not sufficient evidence before him to determine whether the claimant would have made any profits at all, had it taken over the contract itself and undertaken to carry it out.

The exceptions are overruled, and report of special master confirmed.